UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Stephen DiChiara,
        Plaintiff

        v.                          Case No. 22-cv-131-SM
                                    Opinion No. 2023 DNH 083

The Town of Salem,
        Defendant

**O R D E R**

Stephen DiChiara was employed by the Town of Salem as a police officer.  He brings this action against the Town seeking compensation for alleged violations of various state and federal constitutional rights.  He also asserts common law claims for defamation, intentional and negligent infliction of emotional distress, and conversion.  DiChiara seeks compensatory and punitive damages, equitable relief, and an award of costs, interest, and attorney's fees.

The Town originally moved to dismiss all of DiChiara's claims for failure to state a viable cause of action.  See Fed. R. Civ. P. 12(b)(6).  By order dated January 27, 2023, the court converted that motion into one for summary judgment.  See Fed. R. Civ. P. 12(d).  The Town was instructed to refile the

documents upon which it relied and submit an affidavit executed by a person or persons with first-hand knowledge of the matter, attesting to the fact that the Town's submission is an accurate and complete set of such documents.  For his part, DiChiara was instructed to specifically identify those documents in the so-called "binder" provided by the Town to the Attorney General's office upon which each of his five claims rested.

The parties have responded and, for the reasons given, the Town's motion for summary judgment is granted.

## Background

The relevant facts are as follows.  In July of 2016, the Salem Police Department hired DiChiara as a patrol officer. Approximately three years later, he stopped a vehicle on Interstate 93 for a traffic violation.  DiChiara was alone at the time.  At some point during the stop, DiChiara learned that there was a loaded firearm under the driver's seat.  The operator was placed under arrest on an outstanding warrant.  The complaint alleges that subsequently (although it is entirely unclear when), one of the people who had been a passenger in the vehicle told DiChiara that, "as he was initially approaching the vehicle at the side of the highway, the operator asserted to the

other occupants of the vehicle that he was 'going to kill a cop,' and that at the last moment one of the occupants had successfully managed to persuade[] the felon in possession not to gun down the Plaintiff."  Amended Complaint (document no. 24) at para. 21.  As a result of the emotional trauma he suffered in the wake of that encounter, DiChiara developed PTSD which "disabled him from performing the regular duties of his occupation."  Id. at para. 23.  Accordingly, he sought and was eventually awarded workers' compensation benefits.

As part of DiChiara's application for workers' compensation benefits, the Town of Salem was authorized to receive and did, in fact, receive information relevant to that application – including DiChiara's medical records.  See generally N.H. Rev. Stat. Ann. 281-A:23 V(a)(1) ("The act of the worker in applying for workers' compensation benefits constitutes authorization to any physician, hospital, chiropractor, or other medical vendor to supply all relevant information regarding the worker's occupational injury or illness to the insurer, the insurer's representative, the worker's employer, the worker's representative, the worker's employer's representative, and the department.  Medical information relevant to a claim includes a

past history of complaints of, or treatment of, a condition
similar to that presented in the claim.") (emphasis supplied).

At about the same time, the Town was generally concerned
that some of its employees (including DiChiara) may have
overstated the nature of work-related injuries in an effort to
secure workers' compensation benefits.  Accordingly, the Town
notified attorneys at the New Hampshire Attorney General's
Office of "possible fraudulent activity."  Amended Complaint at
para. 40.  Then, according to DiChiara, "on March 6, 2020,
Defendant's Human Resources Director Anne Fogarty mailed a
binder containing Plaintiff's privileged and confidential <u>mental
health</u> records, <u>medical</u> records, and <u>worker's compensation
records</u> to then Deputy Attorney General Jane Young."  <u>Id.</u> at
para. 43 (emphasis supplied).[1]

In her cover letter to Attorney Young, Ms. Fogarty stated,
"It appeared to me that [DiChiara] possibly enhanced the injury
when describing what occurred to his providers."  <u>Id.</u> at para.
45.  That opinion was apparently based, at least in part, on the

---

[1]     The vast majority of documents in that binder relate to
Town employees other than DiChiara.  And, contrary to the
allegations of the amended complaint, the binder does <u>not</u>
contain any of DiChiara's confidential medical or mental health
records.

Department of Labor Hearing Officer's finding that DiChiara's testimony about the events giving rise to his claimed disability was "inconsistent," as well as the Hearing Officer's related finding that DiChiara tried to falsely suggest that he had been in a "physical altercation with the perpetrator and guns had been shown during the course of this action . . . [when] this in fact is not true." Decision of the Hearing Officer (document no. 35) at 55. Indeed, the Hearing Officer concluded that, "Most regretfully, the claimant's testimony relative to the facts of this case was not persuasive." Id. at 56.

When the Town did not hear back from the Attorney General's Office, the Town Manager sent a follow-up email to Deputy Attorney General Young seeking an update, stating that, "I was under the impression you were going to go through the binder and possibly decide if this warrants an investigation." Email from Christopher Dillon (document no. 35) at 129. Several months later, in November of 2020, Assistant Attorney General Nicole Clay notified the Town that her office had concluded its review and "[t]he information provided does not support a criminal allegation on the part of any Town of Salem employee or former employee." Letter from Assistant Attorney General Clay (document no. 35) at 163. This litigation ensued.

As noted above, DiChiara alleges that the Town unconstitutionally "seized" and then unlawfully disclosed confidential "mental health, medical, and New Hampshire Labor Department documents to multiple individuals."  Amended Complaint at para. 31.  The undisputed facts, however, are less compelling.

In response to the court's order directing him to specifically identify the documents upon which each of his claims rely, DiChiara filed a Supplemental Memorandum in Opposition to Summary Judgment (document no. 39).  That filing makes plain that, despite the claims in DiChiara's amended complaint, the Town did not share with the Attorney General's Office any of DiChiara's confidential medical or mental health records.  Instead, all of DiChiara's claims rest upon the assertion that the Town improperly provided to the Attorney General's Office a copy of the Decision of the Department of Labor's Hearing Officer, dated November 19, 2019 (document no. 35), pages 51-56.  And, because the Hearing Officer's decision makes reference to notes made by DiChiara's counsellors, see id. at 53-54, DiChiara says that when the Town provided the Attorney General's Office with a copy of that decision, it necessarily also shared his confidential medical and mental health records.

6

**Discussion**

In his amended complaint, DiChiara advances five state and federal claims:

> Count One: the "warrantless and unlawful seizure" of his confidential medical records, mental health records, and worker's compensation records, in violation of the state and federal constitutions (Id. at para. 79);
>
> Count Two: defamation arising from the Town's communications with the Attorney General's office and its "meritless and defamatory accusations of criminal fraud" on DiChiara's part (Id. at para. 95);
>
> Counts Three and Four: intentional and negligent infliction of emotional distress arising from the Town's "unauthorized seizure . . . [and] unauthorized dissemination" of DiChiara's confidential medical records and its "meritless accusations of criminal fraud." (See Id. at paras. 111, 118); and, finally,
>
> Count Five: conversion arising from the Town's "theft" of DiChiara's medical records and its violation of "Plaintiff's right to control disclosure of his mental health documents, medical documents, and New Hampshire Labor Department documents." (Id. at paras. 124 and 126).

DiChiara's claims fall into two broad categories. First, those that turn on the alleged improper "seizure" and subsequent disclosure of his medical and worker's compensation records in the so-called "binder" of materials sent to the Attorney General's Office on March 6, 2020. And, second, those that turn on the alleged "meritless accusations [to the Attorney General's Office] of criminal fraud."

I.   The Town's Communications are not Actionable.

Turning first to the latter category of claims, counts two, three, and four of the amended complaint all rest on DiChiara's assertion that the Town made "meritless and defamatory accusations of criminal fraud" in its communications with the Attorney General's Office.  Even assuming the statements identified by DiChiara are actually defamatory, rather than matters of opinion (e.g., voicing mere suspicions based upon administrative proceedings) – an open question the court need not resolve – it is plain that those statements are subject to an absolute privilege under New Hampshire law and, therefore, cannot form the basis of DiChiara's tort claims.

> Except in extreme cases, for which malicious
> prosecution or abuse of process are adequate remedies,
> a person wrongfully accused of a crime must bear that
> risk, lest those who suspect wrongful activity be
> intimidated from speaking about it to the proper
> authorities for fear of becoming embroiled themselves
> in the hazards of interminable litigation.
>
> * * *
>
> For this reason, we adopt the rule that treats both
> formal and informal complaints and statements to a
> prosecuting authority as part of the initial steps in
> a judicial proceeding, and as such entitled to
> absolute immunity from an action for defamation.  The
> same absolute immunity or privilege applies to
> statements made to the city or county attorney or
> those investigating a suspected crime.

McGranahan v. Dahar, 119 N.H. 758, 769-70 (1979) (citations
omitted) (emphasis supplied).  See also Currier v. Town of
Gilmanton, 2022 DNH 131, 2022 WL 11961748, at *2 (D.N.H. Oct.
20, 2022) ("Under New Hampshire law, statements made in the
course of judicial proceedings, including those preliminary to
proceedings such as a complaint to prosecutors, are subject to
an absolute immunity from defamation claims.") (emphasis
supplied); Hungerford v. Jones, 988 F. Supp. 22, 27 (D.N.H.
1997) (same).


     The Town communicated the statements at issue as part of
its request that the Attorney General's Office investigate what
the Town reasonably believed might be fraudulent conduct.  The
Town is, therefore, absolutely immune with respect to the
allegedly defamatory and/or hurtful comments set forth in its
communications with the Attorney General's Office.  Accordingly,
it is entitled to judgment as a matter of law as to count 2
(defamation), count 3 (intentional infliction of emotional
distress), and count 4 (negligent infliction of emotional
distress).  And, because the court has resolved defendant's
entitlement to summary judgment on grounds that the statements
at issue are absolutely privileged, it need not address the

Town's assertion that its employees (and, by extension, the Town itself) are shielded by official immunity.

II.  "Conversion" of Confidential Records.

Count five of DiChiara's amended complaint – a state common law claim for conversion – is similarly flawed.  According to DiChiara,

> Defendant intentionally exercised unauthorized dominion and control over Plaintiff's mental health documents, medical documents, and New Hampshire Labor Department documents.
>
> Defendant thereby violated Plaintiff's right to control disclosure of his mental health documents, medical documents, and New Hampshire Labor Department documents.
>
> Defendant improperly delivered Plaintiff's mental health documents, medical documents, and New Hampshire Labor Department documents to the Office of the New Hampshire Attorney General.
>
> Defendant's theft of said documents from Plaintiff's worker's compensation file caused Plaintiff to suffer emotional distress accompanied by sleep disturbance and other objective physical symptoms.

Amended Complaint at paras. 123-26 (emphasis supplied).

DiChiara bases his assertion that the Town "stole" or converted the documents at issue upon an exceedingly strained reading of New Hampshire law.  DiChiara points to a single

provision of New Hampshire's Workers' Compensation statute,

which states that:

> Proceedings and records of the department of labor
> with respect to workers' compensation claims under RSA
> 281-A shall be exempt from RSA 91-A [New Hampshire's
> "Right to Know" law].  Nothing in this section shall
> prohibit the <u>department of labor</u> from releasing
> information on a person's claim or claims to the
> person, the person's legal representative, attorney,
> health care providers, employer, the employer's
> workers' compensation insurer, the attorneys for the
> employer or employer's insurer, or <u>state and federal</u>
> <u>agencies with relevant jurisdiction</u>.  Notwithstanding
> the provisions of this section, <u>information relating</u>
> <u>to a person's claim or claims may be released to other</u>
> <u>parties only with the prior written permission of the</u>
> <u>claimant</u>.

N.H. Rev. Stat. Ann. ("RSA") 281-A:21-b (emphasis supplied).

Seizing upon that final sentence, DiChiara says the Town

violated state law when it provided the Attorney General's

Office with a copy of the Hearing Officer's decision in his

workers' compensation case.  And, says DiChiara, that allegedly

unlawful disclosure amounted to common law conversion.


But, the plain language of that statute bars only the

Department of Labor from releasing information relating to a

party's workers' compensation claims.  DiChiara has not

identified any New Hampshire precedent applying that statute

more broadly.  Nor has he pointed to any support for the notion

that RSA 281-A provides a private right of action for its
alleged violation by a party other than the Department of Labor.

Even if the court were to read that statute in the same
sweeping manner advocated by DiChiara, it would, in the context
of this case, directly contradict New Hampshire's common law
doctrine providing that, "complaints and statements to a
prosecuting authority [are] part of the initial steps in a
judicial proceeding, entitled to absolute immunity."
McGranahan, 119 N.H. at 770.  Moreover, the statute unmistakably
authorizes the release of claims information to "state and
federal agencies with relevant jurisdiction."  The New Hampshire
Attorney General has "relevant jurisdiction" over suspected
cases of Workers' Compensation fraud.

DiChiara's "conversion" claim is based on a
misunderstanding of that common law cause of action and it is
without legal merit.  See, e.g., Muzzy v. Rockingham Cnty. Tr.
Co., 113 N.H. 520, 523 (1973) (citing Restatement (Second) of
Torts § 222A(1) (1965)).

III. "Seizure" of Confidential Records.

The precise nature of DiChiara's final claim – "Unlawful Seizure under 42 U.S.C. § 1983" - is difficult to discern.  He seems to concede – as he must - that the Town came into possession of his medical and worker's compensation records lawfully.  See Amended Complaint at para. 73.  See also RSA 281-A:23.  But, he goes on to allege that:

> Defendant Salem's permitted statutory use of Plaintiff's documents that it thereby acquired, was and is strictly limited by RSA 281-A:21-b to worker's compensation proceedings.
>
> Defendant was thereby prohibited from releasing any of Plaintiff's worker's compensation claim documents to any other parties without the prior written permission of the Plaintiff.

Id. at paras. 74-75 (emphasis supplied).  He then concludes, in a circular fashion, that:

> Acting under color of state law, Defendant violated Plaintiff's Civil Rights, Federal and State Constitutional Rights, thereby unlawfully seizing Plaintiff's confidential mental health records, medical records, and New Hampshire Labor Department documents.
>
> * * *
>
> Plaintiff's mental health records, medical records, and worker's compensation records seized by Defendant were submitted to the Office of the New Hampshire Attorney General pursuant to Defendant's policy of pursuing a criminal investigation against Plaintiff

13

relative to Defendant's allegations of "possible
fraudulent activity."

Id. at paras. 82, 88 (emphasis supplied).  That conduct, says

DiChiara, violated his "rights secured by the Fourth and

Fourteenth Amendments of the United States Constitution and Part

I, Articles 2-b and 19 of the New Hampshire Constitution."  Id.

at para. 83.

At this point it is, perhaps, worth noting that 42 U.S.C. §

1983 is a statutory means by which citizens may sue state actors

for violations of federally protected rights.  See Albright v.

Oliver, 510 U.S. 266, 271 (1994).  Section 1983 provides no

remedy for alleged violations of state law.  See Baker v.

McCollan, 443 U.S. 137, 146 (1979).  Consequently, as to count

one of DiChiara's complaint, the court will focus solely on

those aspects alleging that the Town violated rights protected

by the Fourth and Fourteenth Amendments.

It would seem that DiChiara claims that although the Town

lawfully acquired a copy of the hearing officer's decision, its

possession of that document subsequently transformed into an

"unconstitutional seizure" when the Town shared it with the

Attorney General's Office (allegedly in violation of RSA 281-

A:21-b).  If that is, indeed, his claim, he has not developed it
nor has he cited any precedent to support it – despite having
had the opportunity to do so.  And, as noted above, the Town's
disclosure of that document is shielded by an absolute reporting
privilege under New Hampshire law.

     On this record, then, there was no unconstitutional seizure
of DiChiara's records.  The Town lawfully came into possession
of the records related to DiChiara's worker's compensation
claim.  See RSA 281-A:23 V(a)(1).  The Town's subsequent (and
privileged) disclosure of various documents to the Attorney
General's Office did not render its initial acquisition of those
documents violative of the Fourth Amendment.  Even entertaining
the fiction that the Town's acquisition of DiChiara's records
could plausibly be viewed as a "seizure," it was not
unconstitutional at its inception, nor did it become
unconstitutional when the Town shared one or more of those
documents with the New Hampshire Attorney General.  See
generally See Denault v. Ahern, 857 F.3d 76, 84 (1st Cir. 2017)
(concluding that a constitutionally valid seizure of property
does not, based upon subsequent government conduct, mature into
a violation of the Fourth Amendment).  As the Court of Appeals
for the Seventh Circuit has noted, "Once an individual has been

meaningfully dispossessed, the seizure of the property is complete, and once justified by probable cause, that seizure is reasonable." Lee v. City of Chicago, 330 F.3d 456, 466 (7th Cir. 2003). Subsequent governmental use or possession of that property neither continues the initial seizure nor begins another. Id.[2]

### Conclusion

DiChiara's claims are speculative, untethered to legal precedent or essential facts, and often hyperbolic. As but one example, he asserts that:

> It is <u>undisputed</u> that Defendant intentionally engaged in a continuing course of conduct that was the equivalent of "swatting" - the practice of making a <u>prank report</u> to law enforcement to bring about a large-scale response. <u>As amply demonstrated</u>, Defendant's "swatting" policy was systematically executed over a period of at least February through November of 2020 and was executed by Defendant against nearly two dozen former employees. . . . In its execution of this policy against Plaintiff (and others), Defendant took privileged and confidential documents that it did not have the legal right to disseminate and turned those documents over to state law enforcement officials in furtherance of its "swatting" scheme. It is <u>undisputed</u> that <u>Defendant had no good faith basis</u> to accuse Plaintiff of fraud or of "possibly committing fraud."

---

[2]   Parenthetically, the court notes that DiChiara's amended complaint does not advance any claims under the Fifth Amendment to the U.S. Constitution. <u>See generally</u> Denault, 857 F.3d at 83-84.

Plaintiff's Reply Memorandum (document no. 32) at 1 (emphasis supplied).

Nothing of the sort is "undisputed," nor has DiChiara "amply demonstrated" anything of legal significance, having neglected to respond in a meaningful way to the Town's filings and having failed to submit an affidavit attesting to any of his various unsworn factual assertions.

To survive the Town's motion for summary judgment, more than unsupported factual claims and speculative legal theories is necessary. The Town has submitted all of the documents it provided to the Attorney General's Office and it has persuasively shown that none gives rise to any viable state or federal claims. See Affidavit of Christopher Dillon (document no. 34) and Revised Submission of Documents Provided to the Attorney General (document no. 35). See also Defendant's Memorandum in Support of Motion to Dismiss (document no. 26-1) and Defendant's Reply Memorandum (document no. 40). Among other things, the Town has demonstrated that none of DiChiara's medical or mental health records were provided to the Attorney General's Office, thereby refuting the factual claim central to DiChiara's amended complaint.

17

In response, DiChiara has pointed to a single document (the hearing officer's decision) and an audio transcript of the hearing itself that he says support all of his claims.  He has, however, failed to point to any genuinely disputed material facts, nor has he cited legal precedent supporting his position.  Instead, he has presented strained and confusing claims and left it to the court to determine if any are viable under state or federal law.  But, as this court has noted in the past, it cannot act as legal counsel to one of the parties, nor can it posit legal or factual claims on their behalf.  See Int'l Tape Co. Inc. v. Technicote, Inc., 2000 DNH 095, 2000 WL 33667076, at *3 (D.N.H. Apr. 21, 2000) (collecting cases).

For the foregoing reasons, as well as those set forth in defendant's legal memoranda (documents no. 26-1 and 40), defendant's Motion for Summary Judgment (formerly, Motion to Dismiss) (**document no. 26**) is granted.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

18

July 12, 2023

cc:  Christopher A. Bandazian, Esq.
     John Prendergast, Esq.
     K. Joshua Scott, Esq.
     Nathan W. Kenison-Marvin, Esq.